IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DOMINIC COLLIER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 3:22-cv-00036 |
| F/N/U KAST, et al., | ) ) JUDGE RICHARDSON |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is a pro se Complaint for violation of civil rights (Doc. No. 1) filed pursuant to 42 U.S.C. § 1983 by Plaintiff Dominic Collier, an inmate of the Rutherford County Adult Detention Center in Murfreesboro, Tennessee. Plaintiff has also filed an application for leave to proceed in forma pauperis (IFP). (Doc. No. 10.)

The case is now before the Court for ruling on the IFP application and an initial review of the Complaint pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

## APPLICATION TO PROCEED IFP

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). Because it is apparent from Plaintiff's IFP application that he lacks the funds to pay the entire filing fee in advance, that application (Doc. No. 10) is **GRANTED**.

Pursuant to 28 U.S.C. §§ 1915(b) and 1914(a), Plaintiff is nonetheless assessed the $350 civil filing fee. The warden of the facility in which Plaintiff is currently housed, as custodian of Plaintiff's trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the

greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility where Plaintiff is housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 801 Broadway, Nashville, TN 37203.

## INITIAL REVIEW OF THE COMPLAINT

I. PLRA SCREENING STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, Section 1915A provides that the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial assessment of whether the complaint states a claim upon which relief may be granted asks whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is

2

plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the Court must view the complaint in the light most favorable to Plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

II. SECTION 1983 STANDARD

Plaintiff seeks to vindicate alleged violations of his rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

III. ALLEGED FACTS

Plaintiff alleges that, in "early 2020," he was taken to booking where Officer Kast, along with two other officers and a nurse, "hooked jumper cables" and a car battery to him and "electr[o]cuted" him for over 20 minutes. (Doc. No. 1 at 5.) After stopping to check Plaintiff's blood pressure, the officers then "resumed electr[o]cuting" him. (*Id.*) Plaintiff "thought [his] heart was going to explode" and felt pain in his hands and feet "like sparks were shooting out of [his] finger nails." (*Id.*) He claims that these actions constitute police brutality, torture, and attempted murder, and states that he did not report them to the authorities that operate the detention facility because of "corruption and fear." (*Id.* at 4–5.) As relief, Plaintiff seeks an award of $50 million in damages. (*Id.* at 6.)

IV. ANALYSIS

The Complaint describes an event that, though it strains credulity, is not clearly the product of delusion; it is therefore not subject to dismissal as frivolous at this time. *See Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990) ("The facts must be delusional to be frivolous."). However, the event described in the Complaint is alleged to have occurred in "early 2020." (Doc. No. 1 at 5.) The limitations period that applies to Section 1983 actions arising in Tennessee is one year, based on the applicable statute of limitations supplied by state law, *i.e.*, Tenn. Code Ann. § 28-3-104(a)(1). *Dibrell v. City of Knoxville, Tennessee*, 984 F.3d 1156, 1161 (6th Cir. 2021).[1] The limitations period begins to run from the time the Section 1983 claim accrued,[2] and federal law

---

[1] "The statute of limitations applicable to a § 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citing *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 519 (6th Cir. 1997)). With respect to Section 1983 claims arising in Tennessee, this means that the limitations period for Section 1983 claims is one year. *Jordan v. Blount Cnty.*, 885 F.3d 413, 415 (6th Cir. 2018) (citing Tenn. Code Ann. § 28-3-104(a)).

[2] As the undersigned noted years ago, "[a] limitations period generally begins to run from the time the cause of action 'accrued.'" Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1036 (1997).

4

governs when a cause of action under Section 1983 accrued. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("While we have never stated so expressly, the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.").

The Sixth Circuit utilizes the "discovery rule" and "[a]s a result, a § 1983 claim 'does not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, both his injury and the responsible party.'" *Cox v. City of Jackson, Tennessee*, 811 F. App'x 284, 288 (6th Cir. 2020) (quoting *Hall v. Spencer Cnty., Ky.*, 583 F.3d 930, 933 (6th Cir. 2009)).[3] "This objective inquiry asks 'what event should have alerted the typical lay person to protect his or her rights.'" *Id.* (quoting *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005)). In the present case, there can be no doubt that the event in question is the alleged electrocution of Plaintiff; it is at this time that Plaintiff obviously would have been fully aware of his (alleged) injury and the (alleged) responsible parties. As the Complaint makes clear that this allegedly

---

Yet, "the date of accrual is not necessarily synonymous with the date that the limitations period begins to run; the limitations period begins to run from the date of accrual only to the extent that applicable law says so." *Id*.

"As it turns out, applicable law usually does say so; by judicial decision, by a general statute relating to the running of limitations periods, or by language in the particular statute of limitations itself, a statute's limitations period usually runs from the date of accrual." *Id.* at 1036-37. Here, the Court has no doubt that the rule is that the limitations period generally begins to run from the date of accrual, and thus for purposes of the general rule treats the date of accrual as synonymous with the date of the beginning of the running of the limitations period, consistent with how federal courts so often essentially equate the two dates. *See*, *e.g.*, *D.S.S. by & through McDowell v. Prudential Ins. Co. of Am.*, No. 21-5315, 2022 WL 95165, at *4 (6th Cir. Jan. 10, 2022) ("[On December 31, 2014, the cause of action accrued . . . and the [one-year] limitations period began to run. Thus, the district court did not err in determining that the cause of action accrued on December 31, 2014, and that the limitations period ran one year after that date."); *Bishop v. Children's Ctr. For Dev. Enrichment*, 618 F.3d 533, 536 (6th Cir. 2010) (noting that while for some statutes the statute of limitations is "borrowed from state law, the actions accrue and the statutory period begins to run according to federal law").

[3] In 2019, the Supreme Court compared the "standard rule" of accrual—where "the limitations period commences when the plaintiff has a complete and present cause of action"—to the "discovery rule." *Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019) (quoting *Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 418–419 (2005)). The Supreme Court said an "expansive approach to the discovery rule is a bad wine of recent vintage." *Id.* (quotation omitted). However, the Sixth Circuit recently declined to overturn the usage of the discovery rule as applied to Section 1983 claims. *Dibrell*, 984 F.3d at 1162 ("Our § 1983 caselaw, by contrast, has started the accrual analysis with the competing discovery rule: that the claim accrues when the plaintiff knows of, or should have known of, that cause of action. Do our cases imbibing this 'bad wine' warrant reconsideration in light of the Supreme Court's recent teachings? We need not resolve this tension now . . .").

5

occurred "in early 2020," the limitations period began running "in early 2020," and Plaintiff therefore had one year from that date to file the instant Section 1983 claim.

Although the statute of limitations is an affirmative defense, district courts may apply it *sua sponte* on initial review where the defense is obvious. *Comer v. Transit Auth. of N. Kentucky*, No. 2:20-CV-00084-GFVT, 2020 WL 3719818, at *2 (E.D. Ky. July 6, 2020) (citing, *e.g.*, *Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim; that does not make the statute of limitations any less an affirmative defense[.]"); *Franklin v. Fisher*, No. 16-6464, 2017 WL 4404624, at *2 (6th Cir. May 15, 2017) (finding that dismissal at PLRA screening for failure to state a claim was proper because complaint's untimeliness was "obvious from the face of [the] complaint")).

Even assuming for the sake of argument that the Complaint would otherwise state a colorable claim based on events that occurred in early 2020, it was not signed and filed until January 2022, and no delay in filing is attributable to Plaintiff's pursuit of a remedy through the detention facility's grievance process. *See* Doc. No. 1 at 4–6; *Franklin*, 2017 WL 4404624, at *3 (finding that statute of limitations applicable to prisoner's police misconduct complaint is only tolled during pursuit of remedies within the prison grievance system, not remedies "with various city entities" outside that system). The Complaint is thus clearly late and subject to dismissal on that basis.

## CONCLUSION

As set forth above, the Court finds that the Complaint fails to state a claim upon which relief may be granted. This case is therefore **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE